## ALLIED CHEMICAL CORPORATION et al., Appellants,

### v.

## AMERICAN INDEPENDENT OIL COMPANY, Appellee.

### No. 18029.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 1, 1981.

Rehearing Denied Oct. 19, 1981.

Dan Matthews, Fulbright & Jaworski, Houston, for appellants.

Paul Clote, Ben H. Sheppard, Jr., Vinson & Elkins, Houston, for appellee.

Before SMITH, PEDEN and DUGGAN, JJ.

SMITH, Associate Justice.

This is an appeal from a summary judgment construing an agreement dated April 25, 1955. The only contested issue on appeal is whether appellee is entitled to recover various wind-up expenses incurred during one quarter from the net profits already determined and paid for in a prior quarter.

In 1955, Anderson-Pritchard Oil Corporation and appellee each possessed a 1/12th of 5% interest in an Iranian oil consortium. By agreement dated April 25, 1955, Anderson-Pritchard assigned its 1/12th interest to appellee in return for appellee's agreement to pay Anderson-Pritchard 50% of the net profits attributable to such interest. After various intervening assignments, appellants became entitled to the 50% of the net profits under the agreement.

As a result of the revolution in Iran, no oil has been delivered to appellee since December 31, 1978, and there is no prospect for future net profits arising from participation in the consortium. Notwithstanding a stoppage of the oil deliveries, appellee incurred and apparently will continue to incur certain wind-up expenses. Prior to this suit appellee made a demand upon appellants to pay a proportionate share of the wind-up expenses. When appellants refused to make such payments, appellee suspended payments of net profits it had in hand.

The appellants brought suit for the net profits that the appellee was withholding and the appellee cross-filed, requesting the court to determine that it was entitled to receive payment of all of its wind-up expenses. The appellee paid the appellants the monies it had received from the consortium, but the appellants have refused to pay the wind-up expenses.

Appellants, after the payments by the appellee, dismissed their suit against the appellee, leaving only appellee's cause of action to be tried.

In the trial court the parties entered into a joint stipulation of facts, and each side presented a motion for summary judgment. The trial court granted the motion of the appellee, American Independent Oil Company for summary judgment and denied that of the appellants, Allied Chemical Corporation and Joseph E. Seagram & Sons, Inc.

Appellants' only point of error states that under the 1955 agreement, appellee is not entitled to recover expenses incurred in one quarter out of a prior quarter's net income

because (1) appellants' construction of the contract is necessary to harmonize and prevent conflicts in the agreement, and (2) the rule that the inclusion of one or more things in a class implies the exclusion of all things of the same class not expressed.

Three portions of the 1955 agreement bear directly on the issue at hand; they are provisions 3, 3E and 3F, which state as follows:

3. As further consideration for this agreement, American Independent agrees to pay Anderson-Pritchard fifty percent (50%) of all the net profits realized and derived from the interest acquired in accordance herewith after American Independent shall have recovered all of its investment costs and all expenses of every kind and character attributable to the said one-twelfth of five percent (1/12th of 5%) interest acquired in accordance herewith.

. . . . .

3E. No payments hereunder shall be due Anderson-Pritchard until such time as American Independent shall have received, after all taxes, including such dividend and income taxes as may be paid or accrued for the United States Government, sufficient funds attributable to the said one-twelfth of five percent (1/12 of 5%) interest, aggregating or equalling the total sum of all of the investment, costs and operating expenses incurred by American Independent as to such interest. The investment of American Independent shall include all stock subscriptions, working capital contributions or advances, organization expense and all other payments required by or related to the Iranian Oil Consortium and actually paid by American Independent. . . .

3F. After American Independent has recovered all of its investment and expenditures of every kind and character relative to the interest acquired in accordance herewith as provided in Paragraph (E) above, then such fifty percent (50%) of the net profits attributable thereto (being twenty-five percent (25%) of the net profits of American Indepen-

dent in and to the Iranian Oil Consortium) shall be paid quarterly to Anderson-Pritchard not later than ninety (90) days after the close of each quarter as defined in the documents of the Iranian Oil Consortium. It is understood and agreed that net profits under this Agreement shall be deemed cumulative. That is, in the event expenses and costs incurred by American Independent during any quarter result in a loss rather than a profit, such loss shall be carried forward into the succeeding quarter or quarters. The net profit payments as provided by the Agreement shall be made by American Independent to Anderson-Pritchard throughout the remaining term of the Iranian Oil Consortium including the three five-year extensions as provided therein, as well as any other extensions of the Consortium as may be agreed upon by the participants thereof. In the event the payment of any sum or sums is required in connection with the execution of an extension of the Iranian Oil Consortium Agreement beyond the original 40-year term, Anderson-Pritchard will pay to American Independent one half (1/2) of such sum or sums.

■ Appellants' first argument in support of their point of error is that once net profits for a quarter are determined and paid, that quarter is closed and those net profits paid may not be recovered by appellee to offset a subsequent quarter's expenses. Appellants contend that this construction of the agreement is necessary to harmonize and prevent conflict between subsequent subsection (F), which authorizes quarterly payments of net profits, and subsection (E), which authorizes appellee to recover all of its expenses before any payments are due. Appellants emphasize that since section (F) provides that net profits are to be paid quarterly within 90 days after the close of each quarter, this implies that each quarter should stand independent of what may happen in subsequent quarters. We cannot agree with this construction of the contract. Appellants' construction confuses the question of *whether* the

expenses are owed, with the question of *when* such expenses are to be paid. All parties agree that this is a *net profits* contract, and that such contract is unambiguous. Paragraph 3B of the agreement states how to determine net profits as follows:

> For the purpose of this agreement, net profits shall be determined by combining the operations of American Independent and its subsidiaries or affiliates engaged in operations relating to the Iranian oil consortium and deducting all expenses and payments of every kind and character in connection with such operations, including taxes of all varieties paid to any government, except such dividends and income taxes as may be paid for crude for the United States government, from the amounts realized upon the sale by American Independent of the crude oil, refined petroleum products or natural gas obtained or taken by American Independent under the Iranian oil consortium.

The opening provision in paragraph 3 along with provisions 3A and 3B govern what the parties intended net profits to be under the terms of the 1955 agreement. We are of the opinion that the contract defines net profits as those profits that exist "after the recovery of all investment costs and all expenses of every kind and character have been deducted."

It is true, as appellants contend, that subsection 3F provides that net profits are to be paid quarterly within 90 days after the close of each quarter, but we hold that this provision only expresses the intention of the parties as to *when* such expenses are to be paid, and is neither determinative of the intention of the parties as to what net profits are nor how expenses shall be prorated between the parties to the agreement. It is also true that nowhere in the agreement are the appellants expressly required to pay appellee anything. However, to not require the appellants to pay their prorata share of the expenses would be to allow them to recover gross profits and to defeat the obvious intention of the parties to allow a recovery of net profits.

As stated by the Texas Supreme Court in *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968),

> It is the general rule of the law of contracts that where unambiguous writing has been entered into between the parties, the courts will give effect to the intention of the parties as expressed or as apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is the objective, not subjective, intent that controls.

The Supreme Court goes on to state, on page 519 of the opinion, that "(w)here a question relating to the construction of a contract is presented, as here, we are to take the *wording* of the instrument, *consider the same in the light of the surrounding circumstances*, and apply the pertinent rules of construction thereto and thus settle the meaning of the contract."

■ In applying *Pinehurst* to the appellants' second contention that "the expression in a contract of one or more things of a class implies exclusion of all not expressed, even though all would have been implied had none been expressed," we hold that a rule of construction in law does not overrule or supersede the intention of the parties to the contract. To take a word or a phrase or, as in this instance, an entire paragraph out of context from the content of the entire instrument can distort the true intentions of the parties. The primary object of the court in construing a written contract is to arrive at the intention of the parties to the contract, *Skelly Oil Company v. Archer*, 163 Tex. 336, 356 S.W.2d 774 (1962). *See* also, *Fujimoto v. Rio Grande Pickle Co.*, 414 F.2d 648 (5th 1969); *Phillips v. Houston Nat. Bank*, 108 F.2d 934 (5th 1940).

We hold that the trial court has properly construed the agreement. The appellants' points of error are overruled. The judgment of the trial court is affirmed, and all costs of this appeal are charged to the appellants.