ACCEPTED
03-15-00083-CV
6529478
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/17/2015 4:22:27 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00083-CV

In the Third Court of Appeals
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/17/2015 4:22:27 PM
JEFFREY D. KYLE
Clerk

CRAIG A. WASHINGTON

Appellant,

v.

COMMISSION FOR LAWYER DISCIPLINE

Appellees.

Appeal from the District Court of Bastrop County 335th Judicial District,
Cause No. 29,123

# Brief of Appellant

Michael A. Stafford
  Texas Bar No. 18996970
  mstafford@gardere.com
Katharine D. David
  Texas Bar No. 24045749
  kdavid@gardere.com
Stacy R. Obenhaus
  Texas Bar No. 15161570
  sobenhaus@gardere.com
John MacVane
  Texas Bar No. 24085444
  jmacvane@gardere.com

Gardere Wynne Sewell LLP
2000 Wells Fargo Plaza,
1000 Louisiana Street
Houston, Texas 77002
Tel: 713.276.5500
Fax: 713.276.5555

COUNSEL FOR APPELLANT
CRAIG A. WASHINGTON

**ORAL ARGUMENT REQUESTED**

# Identity of Parties & Counsel

**Respondent/Appellant:**

Craig A. Washington

**Appellate counsel:**

Michael A. Stafford
Texas Bar No. 18996970
mstafford@gardere.com
Katharine D. David
Texas Bar No. 24045749
kdavid@gardere.com
Stacy R. Obenhaus
Texas Bar No. 15161570
sobenhaus@gardere.com
John MacVane
Texas Bar No. 24085444
jmacvane@gardere.com

**Trial counsel:**

Kevin M. Hall
Texas Bar No. 24041041
Attorney at Law
3333 Fannin Street, No. 105
Houston, Texas 77004

Brad Beers
Texas Bar No. 02041400
Attorney at Law
Beers Law Firm
5020 Montrose Blvd., Suite 700
Houston, Texas  77006

| **Petitioner/Appellees:** | **Appellate counsel:** |
|---|---|
| Commission For Lawyers Discipline | Cynthia Canfield Hamilton<br>Office of the Chief Disciplinary Counsel<br>State Bar of Texas<br>Post Office Box 12487<br>Austin, Texas 78711<br>chamilton@texasbar.com |

**Trial counsel**

Judith Gres DeBerry
Texas Bar No. 24040780
Assistant Disciplinary Counel
Rita S. Uribe Alister
Texas Bar No. 17614703
Office of the Chief Disciplinary Counsel
State Bar of Texas
1414 Colorado, Suite 200
Austin, Texas 78701-1627

# Table of Contents

**Page(s)**

Identity of Parties & Counsel ................................................................. ii

Index of Authorities ............................................................................. viii

Statement of the Case .............................................................................. xi

Statement Regarding Oral Argument ................................................... xii

Statement of Issues ................................................................................ xiv

Statement of Facts .....................................................................................1

➢ Mr. Washington's representation of Michael Gobert. ...............................2

➢ Mr. Washington attempts to pass Mr. Gobert's trial setting because of a conflicting murder trial setting. ...........................................................3

➢ The Commission for Lawyer Discipline files a petition against Mr. Washington. ...............................................................................................6

➢ The parties introduce sharply conflicting evidence and theories at trial. ..............................................................................................................7

  • The parties introduce conflicting theories as to whether Mr. Washington attended to his duties to Mr. Gobert. ................................8

  • The parties introduce conflicting evidence about Mr. Washington's efforts to keep his clients reasonably informed. ..............9

➢ The trial court improperly refuses to admit evidence of Mr. Washington's truthful character and allows evidence of a prior administrative suspension into the jury room during deliberations. .......11

➢ The trial court overrules Mr. Washington's jury charge objections .........12

➢ The jury renders a verdict for the Commission and Mr. Washington moves for a new trial. ..........................................................13

➢ The trial court denies Mr. Washington's motion for new trial and suspends his license to practice law for four years. ..................................15

Summary of Argument ..............................................................................16

Argument ........................................................................................18

I.    Standards of Review...............................................................18

II.   The trial court's several errors require a new trial for
      Mr. Washington on all issues of his alleged disciplinary
      violations and the sanction imposed. ......................................19

      A.    Mr. Washington is entitled to a new trial on the issue of
            whether he violated the Disciplinary Rules. ...............................19

            1.    The trial court harmfully abused its discretion by
                  refusing to admit any evidence of Mr. Washington's
                  character for truthfulness when the Commission's
                  accusations put Mr. Washington's character in issue
                  and the Commission attacked Mr. Washington's
                  credibility in numerous ways...............................................19

                  a.    The trial court erred by refusing to allow Mr.
                        Washington to admit evidence of his good
                        character. ...................................................................21

                  b.    Mr. Washington was entitled to introduce
                        evidence of his character for truthfulness to
                        rebut the Commission's onslaught on his
                        credibility throughout the case................................24

                  c.    Refusing to allow Mr. Washington to present
                        character evidence led to the rendition of an
                        improper judgment because the trial hinged
                        upon Mr. Washington's credibility and the
                        evidence the trial court excluded was both
                        overwhelming and compelling.................................26

                        i.    The contradictory testimony and split
                              jury verdict demonstrate that this was a
                              close case in which evidence of Mr.
                              Washington's character would probably
                              have swung the jury's verdict. ........................28

ii. The compelling and overwhelming nature of the character testimony that Mr. Washington sought to introduce also demonstrates that exclusion of this evidence resulted in an improper judgment. ........................................................31

2. The trial court harmfully erred by denying Mr. Washington's motion for new trial after inadmissible evidence of a prior suspension was provided to the jury during deliberations..........................36

   a. The trial court erred by providing the jury with evidence of Mr. Washington's prior license revocation.........................................................38

   b. This error was harmful as shown by the juror's testimony. ........................................................39

3. The trial court harmfully erred in overruling Mr. Washington's objections to the Commission's proposed jury charge because these instructions provided no standard by which the jury could evaluate Mr. Washington's conduct. .................................41

   a. The trial court erred by overruling Mr. Washington's charge objections based upon the lack of any meaningful standard to guide the jury.................................................................42

   b. This charge error was harmful. ................................44

4. Even if any of the above errors could be considered harmless—which is not the case—their cumulative effect requires giving Mr. Washington a new trial. ..........45

B. Mr. Washington is entitled to a new trial on the issue of his sanction. ...................................................................46

1. The trial court harmfully erred in denying Mr. Washington a jury trial on the issue of his sanction. ........47

       2.     The trial court imposed an excessive sanction. ..................50

Prayer ....................................................................................................51

Certificate of Service ..........................................................................53

Certificate of Compliance ..................................................................53

# Index of Authorities

**Page(s)**

**CASES**

*Columbia Rio Grande Healthcare, L.P. v. Hawley*,
284 S.W.3d 851 (Tex. 2009)................................................................18, 41, 44

*El-Ali v. Carroll*,
83 F.3d 414 (4th Cir. 1996)......................................................................22

*Fayzullina v. Holder*,
777 F.3d 807 (6th Cir. 2015)....................................................................21

*In the Matter of G.M.P.*,
909 S.W.2d 198 (Tex. App.—Houston [14th Dist.] 1995, no writ).......21, 23

*G.W. v. Texas Dep't of Family & Protective Services*,
No. 03-14-00580-CV, 2015 WL 658466
(Tex. App.—Austin Feb. 11, 2015, no pet.)....................................................47

*Garcia v. Cent. Power & Light Co.*,
704 S.W.2d 734 (Tex. 1986)........................................................................30

*Goldstein v. Comm'n for Lawyer Discipline*,
109 S.W.3d 810 (Tex. App.—Dallas 2003, pet. denied)........................42, 44

*Hanners v. State Bar of Texas*,
860 S.W.2d 903 (Tex. App.—Dallas 1993, writ dism'd)........................48, 49

*In the Matter of Humphreys*,
880 S.W.2d 402 (Tex. 1994)........................................................................21

*Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*,
995 S.W.2d 661 (Tex. 1999)........................................................................42

*Itani v. Ashcroft*,
298 F.3d 1213 (11th Cir. 2002).....................................................................22

*Ivey v. State,*
   250 S.W.3d 121 (Tex. App.—Austin 2007)
   277 S.W.3d 43 (Tex. Crim. App. 2009)........................................................50

*Jochec v. Clayburne,*
   863 S.W.2d 516 (Tex. App.—Austin 1993, writ denied)............................27

*Mercedes-Benz Credit Corp. v. Rhyne,*
   925 S.W.2d 664 (Tex. 1996)..........................................................................18

*Michael v. State,*
   235 S.W.3d 723 (Tex. Crim. App. 2007)................................................25, 26

*Nat'l Liab. & Fire Ins. Co. v. Allen,*
   15 S.W.3d 525 (Tex. 2000)............................................................................18

*Padilla v. Gonzales,*
   397 F.3d 1016 (7th Cir. 2005)......................................................................22

*In re R.R.,*
   209 S.W.3d 112 (Tex. 2006)..........................................................................18

*Ramirez v. Wood,*
   577 S.W.2d 278 (Tex. Civ. App.—Corpus Christi 1978)............................27

*Redinger v. Living, Inc.,*
   689 S.W.2d 415 (Tex. 1985)..........................................................................39

*Smerke v. Office Equip. Co.,*
   138 Tex. 236, 158 S.W.2d 302 (1941)..........................................................45

*State Bar of Texas v. Kilpatrick,*
   874 S.W.2d 656 (Tex. 1994)....................................................................18, 50

*Tollett v. State,*
   799 S.W.2d 256 (Tex. Crim. App. 1990)................................................39, 40

*Trapnell v. Sysco Food Services, Inc.,*
   850 S.W.2d 529 (Tex. App.—Corpus Christi 1992),
   *aff'd,* 890 S.W.2d 796 (Tex. 1994)..............................................................48

*Univ. of Texas at Austin v. Hinton*,
    822 S.W.2d 197 (Tex. App.—Austin 1991, no writ) ....................................45

**STATUTES**

TEX. CRIM. PROC. CODE ANN. § ART. 56.03 ..............................................49

TEX. GOV'T CODE ANN. 81.077 ................................................................47

TEX. GOV'T CODE ANN. § 74.042 ..............................................................4

**OTHER AUTHORITIES**

U.S. CONST. amend. VII ..............................................................................48

TEX. CONST. art. V. § 10 ............................................................................48

TEX. R. APP. P. 44.1(a)(1) ...................................................................26, 27

TEX. R. CIV. P. 165a ............................................................................5, 6, 9, 10

TEX. R. CIV. P. 216 .........................................................................xvi, 5, 48

TEX. R. CIV. P. 243 ....................................................................................49

TEX. R. CIV. P. 281 ..............................................................................xv, 38

TEX. R. EVID. 403 ...............................................................................xv, 39

TEX. R. EVID. 404(a)(1)(B) ....................... xv, 11, 16, 20, 21, 22, 23, 24

TEX. R. EVID. 405(a) ..................................................................................24

TEX. R. EVID. 608 ...............................................xv, 11, 16, 20, 24, 26

BLACK'S LAW DICTIONARY 1163 (10th ed. 2014) ....................................22

# Statement of the Case

**Nature of the case:**    Attorney discipline proceeding alleging neglect, failure to keep clients informed, failure to deliver documents to which clients were entitled upon termination of representation, and conduct involving dishonesty, deceit, and misrepresentation.

**Course of proceedings:**    Jury trial followed by trial to the bench on the issue of the appropriate sanction.

**Trial court disposition:**    Final judgment imposing a partially probated suspension of four years, one of active suspension, the remainder probated.

## Statement Regarding Oral Argument

This is an important case in which the Court should hear argument. Craig Washington is a former United States Congressman and a paragon of the Texas legal community who has practiced law for over forty years—primarily as a criminal defense attorney. In this case, he received a partially probated, four-year license suspension as a disciplinary sanction for missing docket call in a civil matter because he was trying a murder case at the time.

Several errors occurred during the jury trial in this case. The trial court erroneously excluded all of the voluminous evidence of Mr. Washington's exemplary character and reputation, which in this close case, very likely altered the jury's verdict. The court also sent an exhibit that both it and the parties agreed the jury should not see into the jury's deliberations—an error that the presiding juror testified influenced the jury.

In addition, the trial court's jury instruction provided no guidance whatsoever on the elements necessary for the jury to make findings against Mr. Washington. Questions from the jury during deliberations—and direct testimony from the presiding juror—demonstrate the jury's confusion.

Finally, the trial court improperly denied Mr. Washington's right to have the jury assess punishment, including the nearly $25,000 in liquidated attorneys' fees that the Court ordered Mr. Washington to pay the Commission for Lawyer Discipline.

Oral argument would likely aid this Court's understanding of ways in which the gravity of these errors require granting Mr. Washington a new trial.

# Statement of Issues

## I.

Texas Rules of Evidence 404(a)(1)(B) and 608(a) permit a party to introduce evidence of his good character when either (1) he is accused of conduct involving "moral turpitude," defined as actions involving "dishonesty, fraud, deceit, [or] misrepresentation," or (2) his "character . . . for truthfulness has been attacked."

In this case, the Commission for Lawyer Discipline alleged that Craig A. Washington "engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation." The Commission also accused Mr. Washington of being deceitful throughout its case.

Given the Commission's accusations and strategy to discredit Mr. Washington, did the trial court err by excluding evidence of Mr. Washington's reputation for exemplary character in the Texas legal community?

## II.

In violation of Texas Rule of Civil Procedure 281, Texas Rule of Evidence 403, the trial court's own ruling, and the parties' agreement, the trial court mistakenly gave the jury prejudicial evidence that Mr. Washington's license to practice had previously been suspended. The jury never received any explanation for this suspension before receiving evidence of it during deliberations.

Did this error, either in isolation or in combination with the trial court's other errors, probably cause the rendition of an improper judgment?

## III.

The trial court's charge simply recited disciplinary rules without defining or giving context to the legal standards contained therein. These instructions confused the jury, as established by the jury's questions and testimony from the presiding juror at a hearing on the motion for new trial.

Did the trial court err by overruling Mr. Washington's objections to these instructions?

## IV.

Texas Rules of Disciplinary Procedure 3.06 and 3.08 and Texas Rule of Civil Procedure 216 all dictate that Mr. Washington was entitled to a jury trial on the sanction to be imposed against him.

Did the trial court err by refusing to allow a jury to determine Mr. Washington's sanction?

## V.

During the sanction phase the Court heard voluminous evidence from dozens of prominent Texas citizens and lawyers attesting to Mr. Washington's extraordinary character and capability as a lawyer.

In light of the evidence of Mr. Washington's good character and the myriad ways he benefits his community, did the trial court err by imposing a partially probated four-year suspension of Mr. Washington's license to practice?

## Statement of Facts[1]

Because the reversible errors in Mr. Washington's trial include imposing an excessive sanction and excluding evidence of his good character, an introduction to Mr. Washington's long and prolific career is appropriate.

➢ **Appellant Craig A. Washington's Background.**

The appellant, Craig A. Washington, is a former United States Congressman and a legend in the Texas legal community (*see* 1 CR 235-38).

This is not hyperbole. He has recently been praised by sitting United States District Court Judges as "a warrior in and for the cause of justice" (1 CR 238), "by far one of the best trial lawyers [she] ha[s] ever seen" (1 CR 237), and "Texas's improved version of Atticus Finch" (1 CR 235-36).

Mr. Washington has been practicing law in Texas since 1969, (*see* 8 RR Exh. 1; .pdf p. 9). He has spent most of that time protecting the rights of criminal defendants (*see* 3 RR 135:4-:7; 4 RR 8:18-:19; 7 RR 71:6-:14). Among

---

[1] "CR" means the Clerk's Record, filed in this Court May 8, 2015.

"SCR" means the Supplemental Clerk's Records, filed in this Court June 2, 2015 and July 9, 2015. The record filed on June 2, 2015, is referred to as "1 SCR"; the volume filed on July 9, 2015, is referred to as "2 SCR."

"RR" means the Reporters Record. Citations to Volume 8 of the reporter's record, which contains the trial exhibits, provides a pinpoint citation number to both the exhibit cited and the .pdf page number on which the exhibit appears.

others, Mr. Washington famously obtained an acquittal for Elroy Brown, an inmate in the Huntsville prison accused of killing two wardens (1 CR 243). To demonstrate that Brown acted in self-defense, Mr. Washington "revealed systematic abuse at Huntsville Prison" (1 CR 243) and "prov[ed] that the warden was a sadistic thug aided by the assistant warden" (1 CR 236).

In another chapter of Mr. Washington's storied career, he "refused woefully inadequate federal fees in protest for fear that they would deter . . . qualified attorneys from taking on hard cases" (1 CR 243). Rather than accept the fees, he said, "I would rather accept nothing" (1 CR 243).

At Thurgood Marshall School of Law, where Mr. Washington taught a course in child advocacy, a student once questioned his career of self-sacrifice (7 RR 70:12-71:6). Mr. Washington responded, "I get up and do what I do because I have a passion for it, because there are people's rights out there that need to be protected, and that's my job" (7 RR 71:6-:12).

> ➢ **Mr. Washington's representation of Michael Gobert.**

This attorney discipline proceeding arises from Mr. Washington's representation of Michael Gobert in a real property dispute in Montgomery

2

County[2] (1 CR 8). Mr. Gobert's grandmother, Sherry Randle, originally retained Mr. Washington (4 RR 142:23-143:6). Because Ms. Randle was a family friend of Mr. Washington, he represented Mr. Gobert at a discount and routinely saw Ms. Randle and took her calls without an appointment (4 RR 131:18-132:9).

Mr. Washington took discovery and prepared Mr. Gobert's case for trial. Three depositions were conducted; Mr. Washington's office represented Mr. Gobert at each of them (4 RR 5-17). In addition, Mr. Washington conducted other discovery and informally investigated the claims (4 RR 18-19; 127:12-128:11).

> **Mr. Washington attempts to pass Mr. Gobert's trial setting because of a conflicting murder trial setting.**

The central disciplinary infraction in this case arises from Mr. Washington's handling of conflicting court settings. On the date set for pretrial conference in the Gobert case, Mr. Washington was picking a jury for a Harris County murder trial (*see* 8 RR P's Exh 9, .pdf 23; 4 RR 34:13-:21). Both pretrial conferences were set on the same Friday, and testimony

---

[2] For convenience, the litigation in which Mr. Washington represented Mr. Gobert is referred to in this brief as "the Gobert case" or "the Gobert litigation." The court in which that matter was pending is sometimes referred to as "the Gobert court."

in the murder trial was to start the next Monday—the same day as Mr. Gobert's trial (4 RR 35:2-:3; 8 RR P's Exh 9, .pdf 23).

Though these settings conflicted, Mr. Washington did not know if either of the two cases would be called to trial because each case was "among many cases set on those two dates" (4 RR 44:10-:15). In particular, in the Harris County criminal court "[t]here may be 20 or 30 cases set" (4 RR 34:1).

Mr. Washington was prepared to try the Gobert case and the murder case on the assigned trial settings, but wished to avoid losing either setting if the other case was passed (4 RR 94:7-:13).

So, rather than continue the Gobert trial, Mr. Washington appeared for docket call in the Harris County murder trial pursuant to a local rule that gave criminal cases precedence over all others absent a specific agreement to the contrary (8 RR P's Exh 20, .pdf 104 (Second Administrative Judicial Region of Texas Regional Rule of Administration Rule 10.2.2.1); 4 RR 46:7-48:1).[3]  Had the murder case not been called to

---

[3] These local rules govern both Harris County and Montgomery County because both are in the Second Administrative Judicial Region. *See* Tex. Gov't Code Ann. § 74.042(c).

trial, Mr. Washington "would have left . . . and gone to the [Gobert court] to see where he was on the list up there for the next week" (4 RR 95:3-:9).

As it happened, however, Mr. Washington picked a jury in the murder case that very day and therefore knew that the murder trial would certainly conflict with the Gobert case (4 RR 34:13-:23; *see* 4 RR 94:3-:6). At that point, Mr. Washington's office called the Gobert court to inform it of the conflict (4 RR 35:18-36:3). Mr. Washington's office also sent another lawyer to the Gobert court to explain the situation (4 RR 35:23-36:3).

Mr. Washington also called opposing counsel in the Gobert case and informed him that the conflicting murder trial would prevent going forward with the Gobert trial (4 RR 54:5-:9).

In addition to calling the court and opposing counsel on the Friday of the pretrial, the following Monday, when the trial was to begin, Mr. Washington's office again called the Gobert court to ensure that it had passed the trial in accordance with the local rules (8 RR P's Exh 18, .pdf 83).

At that point, with Mr. Washington in trial on a murder case, the Gobert court informed his office—over the phone—that it would be dismissing Mr. Gobert's case for want of prosecution (*id.*). Though Texas Rule of Civil Procedure 165a required the court to provide notice and a

5

hearing before dismissing the case, the court did neither (*see* 4 RR 102:4-106:7; 8 RR R's Exh. 2, .pdf 197).  Instead, it dismissed Mr. Gobert's case without written notice to either party (4 RR 102:22-104:1; 8 RR P's Exh 18, .pdf 84).

Mr. Washington filed a verified motion to reinstate the case pointing out that the conflicting trial setting had made it impossible for him to attend Mr. Gobert's trial (8 RR P's Exh 18, .pdf 85-89). The Gobert court denied the motion to reinstate, again without a hearing (8 RR P's Exh 18, .pdf 85-89). In doing so, the court again violated Texas Rule of Civil Procedure 165a, which requires that a judge presented with a verified motion to reinstate "set a hearing on the motion as soon as practicable" (4 RR 106:10-107:19).

Mr. Washington appealed the dismissal and the denial of his motion to reinstate, but the El Paso Court of Appeals affirmed the trial court (8 RR P's Exh 17, .pdf 60-64).

> ➤ **The Commission for Lawyer Discipline files a petition against Mr. Washington.**

The Commission for Lawyer Discipline (the "Commission") then filed a disciplinary petition against Mr. Washington alleging that he

violated the Texas Disciplinary Rules of Professional Conduct (the "Disciplinary Rules") by, among other things "neglect[ing] a legal matter entrusted to [him]" and "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation" (CR 9).

Mr. Washington demanded that a jury determine all factual issues in the case, including the appropriate sanction, if any, for his conduct and the amount of the Commission's reasonable and necessary attorneys' fees (1 CR 105). The trial court denied Mr. Washington's request for a jury trial on all aspects of his sanction (2 RR 4:16-5:25).

➢ **The parties introduce sharply conflicting evidence and theories at trial.**

At trial, the Commission focused upon two bases to establish Mr. Washington's disciplinary violations. First, it argued that he had failed to reasonably attend to Mr. Gobert's case by missing docket call and trial. Second, it contended that Mr. Washington had essentially lied to his clients, Mr. Gobert and his grandmother, Sherry Randle, about the status of the case, including the dismissal.

- *The parties introduce conflicting theories as to whether Mr. Washington attended to his duties to Mr. Gobert.*

On the first point, Mr. Washington testified that he properly attended to Mr. Gobert's case by:

(1) conducting discovery and preparing for trial (*see* 4 RR 94:15-:17),

(2) attending the conflicting murder setting instead of Mr. Gobert's setting in accordance with the local rules,

(3) informing the Gobert court of the conflict by phone on two occasions,

(4) informing opposing counsel of the conflict,

(5) sending a substitute attorney to the Gobert pretrial,

(6) moving to reinstate after the court improperly dismissed the case for want of prosecution without notice or a hearing, and

(7) appealing the court's ruling after it denied the motion to reinstate (again while improperly denying Mr. Gobert his right to a hearing) (*see, generally* 4 RR 81:14-114:2).

The Commission responded by attempting to impeach Mr. Washington with various records reflecting that he had not called the court on both occasions that he claimed (4 RR 36:15-37:4). The Commission also suggested that Mr. Washington's approach to the applicable local rules for conflicting settings—informed by over forty years in practice—was negligent (4 RR 45:7-49:18).

- *The parties introduce conflicting evidence about Mr. Washington's efforts to keep his clients reasonably informed.*

As to keeping his clients informed, Ms. Randle testified that Mr. Washington never informed her that the district court had dismissed Mr. Gobert's case or that he had moved to reinstate the case (3 RR 44:11-:21). Mr. Gobert similarly testified that Mr. Washington was often unreachable (3 RR 144:24-145:14; 156:11-157:10), and that Mr. Washington failed to inform him of the case's dismissal (147:7-:13, 150:8-:12). Mr. Gobert also said that Mr. Washington failed to inform him of his case's trial setting (4 RR 147:14-:16).

By contrast, Mr. Washington testified that he notified Ms. Randle after he learned of the dismissal and before filing his motion to reinstate (4 RR 106:10-:13). While Mr. Gobert testified that Mr. Washington was chronically unavailable, Mr. Washington himself testified that Ms. Randle "had free access to [his] office" (4 RR 132:18-:24). Indeed, Ms. Randle was one of "three or four clients in [Mr. Washington's] life that could come over whenever she wanted without an appointment" (*id.*).

Mr. Washington further testified that he never failed to return Ms. Randle's calls, allow her an appointment, or provide her copies of case

materials (4 RR 132:10-:23). As Mr. Washington explained, this attentiveness came not just from his duty as a lawyer, but because "the case was important to [him]" (*id.*). Mr. Washington similarly testified that when Mr. Gobert—or other family members—called about the case, "[he] would talk to them" (4 RR 133:13-:20).

Mr. Washington also directly rebutted the Commission's allegation that he lied about or concealed problems with the case, including that the case had been dismissed and the dismissal appealed. Specifically, Mr. Washington testified that "[f]rom day one," he "told [Ms. Randle] what the problems were" (4 RR 133:6-:12). And while Mr. Gobert testified that Mr. Washington failed to inform him of the case's trial setting, Mr. Washington testified that he informed both Mr. Gobert and Ms. Randle in person (4 RR 50:7-:14).

As Mr. Washington's counsel explained in closing, the case thus came down to "a red light swearing match," with Mr. Washington advancing one version of events and his former clients advocating another (5 RR 12:17-:23).

Neither party introduced any expert testimony on the extent to which Mr. Washington's efforts to accommodate his conflicting settings, maintain

10

Mr. Gobert's case on the docket, or obtain reinstatement discharged his duties to Mr. Gobert. Instead, the jury—with no guidance from the trial court's charge—was left to determine these issues themselves.

> ➤ **The trial court improperly refuses to admit evidence of Mr. Washington's truthful character and allows evidence of a prior administrative suspension into the jury room during deliberations.**

Given the sharply conflicting testimony, Mr. Washington's credibility was at the forefront. As discussed in additional detail in the argument portion below, Mr. Washington sought to introduce evidence of his truthful character and outstanding reputation in the Texas legal community under Texas Rules of Evidence 404(a)(1)(B) and 608(a) (*see* 4 RR 215:12-:21). The trial court sustained the Commission's objections to this evidence and excluded it (4 RR 217:8-:9, 229:3-:4).

While refusing to allow Mr. Washington to establish his exemplary reputation through character evidence, the trial court inadvertently introduced evidence undermining that reputation (*see* 7 RR 138:21-139:2). Specifically, the jury was given evidence that Mr. Washington had previously received an administrative license suspension even though the Commission, Mr. Washington, and the trial court all agreed this

information should not go to the jury (*see* section, II.A.2., below). As this evidence was admitted "for purposes of the record only," it was never explained to the jury.

> ➢ **The trial court overrules Mr. Washington's jury charge objections.**

In addition to the contested factual allegations, Mr. Washington also objected to the Commission's jury charge submissions because the submissions "we[re] incomplete." In support of this objection counsel for Mr. Washington explained that "[t]he . . . law is clear . . . that there need[ ] to be very specific definitions and instructions to the jury so that they cannot come to a conclusion in an arbitrary manner" (2 RR 7:11-:16). The instructions proffered by the Commission—and which the trial court accepted—contained the following undefined phrases:

> ➢ "reasonably informed about the status of a matter" (1 CR 141);
>
> ➢ "promptly comply with reasonable requests for information" (1 CR 142); and
>
> ➢ "fail to surrender papers to which [a client] was entitled" (1 CR 14)

The trial court overruled Mr. Washington's objections and tendered the Commission's proffered instructions to the jury (2 RR 9:25-10:4).

The absence of definitions confused the jury, which sent notes specifically requesting the definitions of portions of the Disciplinary Rules cited in the charge (2 SCR 25). The jury also asked the trial court to define "file" and to explain when the representation of Mr. Gobert "terminated," as that word was used in one question (1 CR 26, 32).

> **The jury renders a verdict for the Commission and Mr. Washington moves for a new trial.**

Without expert testimony or detailed definitions to guide them, the jury returned a verdict for the Commission (1 CR 137-45). The trial court entered a judgment for the Commission suspending Mr. Washington's license for four years, with eighteen months active suspension and the remainder probated (1 SCR 5).

Mr. Washington then filed a motion for new trial based upon:

> the factual insufficiency of the evidence;

> the erroneously admitted evidence of his suspension; and

> the improper jury instructions (1 CR 253-54).

At a hearing on Mr. Washington's motion, the presiding juror testified, without objection, on multiple issues. In particular, she testified directly to the jury's confusion regarding the Commission's jury

13

instructions. According to the presiding juror, "the terminology, the language, the lack of definitions was an issue" (7 RR 140:23-:25). She testified that "[t]here was a general lack of knowledge and experience throughout the jury about the legal process" and that the jury "did [not] have any guidance on what the legal meaning of reasonably informed meant or should mean in the context of the lawyer client relationship" (7 RR 140:15-:20, 143:2-:6).

Thus, the Commission's jury questions, which required the jury to apply undefined legal standards "made the process of deliberation and reaching a verdict more difficult" (7 RR 140:2-:3). And "[the jury] didn't have enough information or enough definitions" (7 RR 143:22-:23). "As a result, there [were] literally issues with the jurors not having enough evidence or information to answer the questions" (7 RR 144:5-:9). In the vacuum left by the absence of evidence and guidance, "speculation occurred" (7 RR 145:2-:6).

The presiding juror also testified that the improperly admitted evidence of Mr. Washington's license suspension had influenced the jury's deliberations and created an unfavorable impression of Mr. Washington's competency to practice law and his age (*see* 7 RR 138:17-139:25).

Finally, the juror further underscored the close credibility issues in the case by testifying that the jurors discussed whether Mr. Gobert committed perjury during his testimony (7 RR 146:8-:25).

At the new trial hearing, Mr. Washington also presented more than ten witnesses who testified to Mr. Washington's exceptional character, prowess as an attorney, and value to the community. In addition, over fifty people, including Mr. Washington's current and former clients, Texas attorneys, judges before whom Mr. Washington had practiced, elected, officials, community leaders, and others wrote letters in support of Mr. Washington.

➢ **The trial court denies Mr. Washington's motion for new trial and suspends his license to practice law for four years.**

Notwithstanding the presiding juror's testimony, the trial court denied Mr. Washington's motion for new trial—though it reduced the term of his active suspension by six months (*see* 1 CR 319-23). Mr. Washington timely appealed (1 CR 254).

## Summary of Argument

Errors in the admission and exclusion of evidence in this case combined with inadequate jury instructions to result in an improper verdict.

The most obvious and harmful of these errors was the trial court's exclusion of voluminous evidence bearing upon Mr. Washington's character for truthfulness. This evidence was doubly admissible in this case. First, the Commission's allegation that Mr. Washington engaged in "conduct involving dishonesty, fraud, deceit or misrepresentation" directly put Mr. Washington's character for truthfulness in issue and allowed him to introduce evidence of his honest character under Texas Rule of Evidence 404(a)(1)(B). Second, the Commission attacked Mr. Washington's credibility as a witness throughout the trial, allowing him to introduce evidence of his character for truthfulness under Texas Rule of Evidence 608(a). The exclusion of evidence establishing Mr. Washington's character gave the Commission a profound advantage in this contest of credibility between Mr. Washington and the complaining witnesses.

The Commission gained a further advantage when the trial court inadvertently gave the jury evidence of Mr. Washington's previous license

16

suspension. Both the parties and the trial court agreed that this evidence should not go the jury; its unexplained introduction tainted the jury's deliberations and besmirched Mr. Washington's character and capabilities as a lawyer.

The Court compounded these errors by failing to provide the jury with meaningful standards for evaluating Mr. Washington's conduct. The trial court's charge merely recited the Disciplinary Rules without explaining in any way the meaning or normal scope of a lawyer's obligations to his client. The court's charge left phrases like "reasonably informed," "promptly comply," "reasonable requests for information," and "papers to which [Mr. Gobert] was entitled" undefined. For the untrained lay jury the absence of definitions for these terms prevented meaningfully addressing the factual issues in the case and unmoored the jury's deliberations from any factual standard.

The trial court also erroneously denied Mr. Washington his right to have a jury evaluate his sanction and the sanction it imposed was excessive.

# Argument

## I. STANDARDS OF REVIEW

The assigned errors in this case are reviewed for an abuse of discretion as follows:

- The evidentiary ruling excluding Mr. Washington's character evidence (*see Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527-28 (Tex. 2000) ("On appeal, we review a trial court's evidentiary decisions by an abuse of discretion standard."));

- The denial of Mr. Washington's motion for new trial based upon erroneously providing excluded evidence to the jury (*In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) ("We review a trial court's denial of a motion for new trial for abuse of discretion."));

- The overruling of Mr. Washington's charge objections (*Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009) ("Determining necessary and proper jury instructions is a matter within the trial court's discretion, and appellate review is for abuse of that discretion."));

- The sanction imposed on Mr. Washington (*State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656, 659 (Tex. 1994) ("[T]he trial court has broad discretion to determine whether an attorney guilty of professional misconduct should be reprimanded, suspended, or disbarred.")); and

- The denial of Mr. Washington's request for a jury (*Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996) ("We review the trial court's denial of a jury demand for an abuse of discretion.")).

**II.** **THE TRIAL COURT'S SEVERAL ERRORS REQUIRE A NEW TRIAL FOR MR. WASHINGTON ON ALL ISSUES OF HIS ALLEGED DISCIPLINARY VIOLATIONS AND THE SANCTION IMPOSED.**

As discussed in additional detail below, the trial court made several errors entitling Mr. Washington to a new trial on the issues of both liability and the sanction imposed by the trial court.

**A. Mr. Washington is entitled to a new trial on the issue of whether he violated the Disciplinary Rules.**

Mr. Washington is entitled to a new trial because the trial court (1) erroneously excluded voluminous evidence of Mr. Washington's excellent character; (2) erroneously admitted evidence that Mr. Washington's license was previously suspended; and (3) erroneously failed to meaningfully instruct the jury on the controlling law.

*1. The trial court harmfully abused its discretion by refusing to admit any evidence of Mr. Washington's character for truthfulness when the Commission's accusations put Mr. Washington's character in issue and the Commission attacked Mr. Washington's credibility in numerous ways.*

The trial court erred by excluding evidence of Mr. Washington's character for truth and veracity. Mr. Washington sought to introduce "a series of . . . individuals . . . [who] would provide . . . testimony about Mr. Washington's character and reputation for truth and veracity, honesty and plain dealing" (4 RR 228:14-:19). The Commission argued that such

evidence was inadmissible, but Mr. Washington countered that he was entitled to introduce it for two purposes:

a. to defend against the Commission's allegation that Mr. Washington had engaged in "conduct involving dishonesty, fraud, deceit or misrepresentation"[4] (*see* 1 CR 114), Tex. R. Evid. 404(a)(1)(B)

and

b. to support his credibility following attack by the Commission,[5] *see* Tex. R. Evid. 608(a).

The trial court accepted the Commission's arguments and erroneously excluded the evidence (*see* 4 RR 229:3-:4). Exclusion of this evidence—which would have included a series of witnesses testifying to Mr. Washington's exemplary professional reputation and their high opinions of his honesty and veracity (*see* 4 RR 228:14-229:1)—was harmful error.

---

[4] Mr. Washington's trial counsel preserved this issue at 4 RR 215:12-216:16 ("Judge, my position would be the allegations of dishonesty, deceit, misrepresentation are moral turpitude.").

[5] Mr. Washington's trial counsel preserved this issue at 4 RR 216:22-:25 ("I think the bar opened the door to [evidence of Mr. Washington's truthful character] by attempting to impeach Mr. Washington that he was lying and making claims and allegations referencing [his failure to appear for docket call in the Gobert case].").

a. The trial court erred by refusing to allow Mr. Washington to admit evidence of his good character.

Under Texas Rule of Evidence 404(a)(1)(B), "a party accused in a civil case of conduct involving moral turpitude" may offer evidence of a "pertinent character trait" notwithstanding the general prohibition on the admission of character evidence.

In the context of Rule 404(a)(1)(B), "moral turpitude" means "[c]rimes . . . that involve dishonesty, fraud, deceit, [or] misrepresentation." *In the Matter of G.M.P.*, 909 S.W.2d 198, 208 (Tex. App.—Houston [14th Dist.] 1995, no writ) (applying definition from attorney discipline cases to Rule 404(a)(1)(B) evidentiary analysis); *see also In the Matter of Humphreys*, 880 S.W.2d 402, 408 (Tex. 1994) ("Generally, moral turpitude is implicated by . . . dishonesty, fraud, deceit, misrepresentation, . . . or [actions] that reflect adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."). Indeed, every Texas case that Mr. Washington has found defining "moral turpitude"—in whatever context—has concluded that the phrase implicates concepts of deceit and dishonesty. [6]

---

[6] *See, e.g.*, *Fayzullina v. Holder*, 777 F.3d 807, 813 (6th Cir. 2015) ("[C]rimes of making deliberately dishonest statements involving material facts are inherently crimes

21

Black's Law Dictionary is in accord, defining "moral turpitude" as "[c]onduct that is contrary to justice, *honesty*, or morality." BLACK'S LAW DICTIONARY 1163 (10th ed. 2014).

The Commission's allegation that Mr. Washington "engage[d] in conduct involving dishonesty, fraud, deceit, or misrepresentation" (1 CR 114) unquestionably constituted an accusation involving moral turpitude for purposes of Rule 404(a)(1)(B). In its disciplinary petition, the Commission alleged that Mr. Washington engaged in "conduct involving dishonesty, fraud, deceit or misrepresentation" (*see* 1 CR 114). This allegation tracks verbatim the Disciplinary Rule that Mr. Washington allegedly violated, which prohibits engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation." *See* Tex. Disc. R Prof'l Conduct 8.04(a)(3).

Even the Commission's opening statement emphasized that its accusations involved dishonesty, deceit, and misrepresentation. For

---

involving moral turpitude."); *El-Ali v. Carroll*, 83 F.3d 414 (4th Cir. 1996) (collecting cases); *Itani v. Ashcroft*, 298 F.3d 1213, 1215 (11th Cir. 2002) ("Generally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude."); *Padilla v. Gonzales*, 397 F.3d 1016, 1020 (7th Cir. 2005) ("Crimes that do not involve fraud, but that include dishonesty or lying as an essential element also tend to involve moral turpitude." (Internal quotation marks omitted.)).

example, the Commission told the jury that "[Mr. Gobert and his grandmother] were especially hurt by Mr. Washington's dishonesty and deceit, and the fact that he had misrepresented the status of the case to them . . ." (3 RR 12:9-:14).

The Commission stressed to the jury, "[O]ur allegation is that Mr. Washington . . . was dishonest with [his] clients" (3 RR 7:20-:23). It went on to say that Mr. Washington "misrepresented facts to [his clients], and he deceived them into believing something that wasn't--that wasn't what it was" (3 RR 7:20-8:1). To wrap up, the Commission told the jury: "[T]hroughout all of it, [Mr. Washington] was dishonest, deceitful, and misrepresented everything about the status of this case" (3 RR 13:1-:5).

The language of the Commission's accusation and argument throughout this case are thus substantively *identical* to the definition of moral turpitude applied in *Matter of G.M.P.*, 909 S.W.2d at 208, and elsewhere in Texas case law. In addition, the Commission indisputably "accused [Mr. Washington] of conduct involving" dishonesty, deceit, and misrepresentation, all of which have been held—many, many times—to be hallmarks of the moral turpitude analysis. *See* Tex. R. Evid. 404(a)(1)(B).

23

The Commission's accusations against Mr. Washington plainly entitled Mr. Washington under Rule 404(a)(1)(B) to offer "evidence of [the] pertinent character trait," *i.e.,* his honesty. *See id.* Texas Rule of Evidence 405(a) allowed Mr. Washington to prove his honest character "by testimony as to reputation or . . . in the form of an opinion," and the trial court erred by denying Mr. Washington the opportunity to do so. As a result, the Commission's accusations in this case entitled Mr. Washington to offer evidence of his character for truthfulness, and the trial court erred by refusing to allow him to do so.

> b.    Mr. Washington was entitled to introduce evidence of his character for truthfulness to rebut the Commission's onslaught on his credibility throughout the case.

In addition to seeking to introduce evidence of his character for truthfulness under Rule 404(a)(1)(B), Mr. Washington also should have been allowed under Texas Rule of Evidence 608(a) to introduce character evidence to rebut the Commission's attacks on his truthfulness as a witness.

Texas Rule of Evidence 608 provides that, "after the character of [a] witness for truthfulness has been attacked," the witness's credibility "may

24

be . . . supported by evidence in the form of opinion or reputation." "[T]he question [to determine whether the door has been opened] is whether a reasonable juror would believe that a witness's character for truthfulness has been attacked by cross-examination, evidence from other witnesses, or statements of counsel (*e.g.,* during voir dire or opening statements)." *Michael v. State*, 235 S.W.3d 723, 728 (Tex. Crim. App. 2007).

In this case, the Commission mercilessly attacked Mr. Washington's character for truthfulness throughout its case—as it had to in order to prove its accusation that he "engaged in conduct involving dishonesty, fraud, deceit or misrepresentation." For example, in its opening statement the Commission argued that "throughout all of it, [Mr. Washington] was dishonest, deceitful, and misrepresented everything about the status of this case" (3 RR 13:1-:5).

In addition, throughout Mr. Washington's direct examination, the Commission attempted to contradict his testimony using his deposition and various documents from his case file. These attacks were particularly impactful with regard to Mr. Washington's actions to alert the Gobert court to Mr. Washington's conflicting setting in the Harris County murder case (*see, e.g.,* 4 RR 31:1-19, 33:11-34:6; 35:18-37:4; 39:10-41:13; 39:16-42:23). The

Commission also attempted to portray Mr. Washington as a liar by casting his interpretation of applicable rules as mere "claims" and "allegations" fabricated from thin air to justify his actions (*see* 46:22-48:13). The Commission further attacked Mr. Washington's credibility by reading to the jury from the appellate brief where opposing counsel in the Gobert case contradicted Mr. Washington's testimony that he had provided notice of the conflicting settings (4 RR 66:24-67:25).

The attacks on Mr. Washington's credibility, like the Commission's accusations involving moral turpitude, would have led "a reasonable juror [to] believe that [Mr. Washington's] character for truthfulness ha[d] been attacked." *See Michael*, 235 S.W.3d at 728. As a result, these attacks opened the door to Mr. Washington admitting evidence of his character for truthfulness. *See* Tex. R. Evid. 608.

> c. Refusing to allow Mr. Washington to present character evidence led to the rendition of an improper judgment because the trial hinged upon Mr. Washington's credibility and the evidence the trial court excluded was both overwhelming and compelling.

A trial court's error requires reversal on appeal if it "probably caused the rendition of an improper judgment." *See* Tex. R. App. P. 44.1(a)(1). The

26

analysis "require[s] [this Court] to review the entire record and grant a reversal . . . if [it is] convinced that a different verdict would have been rendered but for the error." *Ramirez v. Wood*, 577 S.W.2d 278, 289 (Tex. Civ. App.—Corpus Christi 1978); *see also Jochec v. Clayburne*, 863 S.W.2d 516, 522 (Tex. App.—Austin 1993, writ denied) (because "jury probably would have reached a different verdict" absent error, error required reversal).

Given the close nature of this case, the focus on Mr. Washington's credibility, and the particularly strong character evidence that Mr. Washington would have introduced, exclusion of the character evidence was harmful. As a result, exclusion of Mr. Washington's character evidence probably led to the rendition of an improper judgment, and requires reversal. *See* Tex. R. App. P. 44.1(a)(1); *Jochec*, 863 S.W.2d at 522.

i. The contradictory testimony and split jury verdict demonstrate that this was a close case in which evidence of Mr. Washington's character would probably have swung the jury's verdict.

This was essentially a three-witness trial.[7] Mr. Washington testified that he had taken diligent steps to inform the Gobert court of his conflicting murder setting and had kept his clients reasonably informed. Mr. Gobert and his grandmother, Ms. Randall, testified that Mr. Washington failed to keep them informed.

The case was thus a he-said-she-said that turned on Mr. Washington's credibility. Mr. Washington testified that he was prepared to go forward on the Gobert setting had he not been called to trial in Harris County; in fact, a desire to maintain that Gobert setting motivated his decision not to file a continuance (*see* 4 RR 94:7-:23). And, had he not been set for a murder trial in Harris County, Mr. Washington testified that he would have appeared for docket call in the Gobert case and obtained a trail setting there (4 RR 95:3-:9).

---

[7] A fourth witness, Sonya Heath, also testified, but the trial court limited her testimony to the fact that the statute of limitations did not expire as to the claims of a minor child in whose interest Mr. Gobert had also filed suit in the Gobert case (*see* 4 RR 219:16-221:3). This testimony thus did not go the central issues in this case.

Mr. Washington testified that he contacted opposing counsel in the Gobert case the day before pretrial (4 RR 95:14-96:9). He further testified that his office contacted the Gobert trial court on that day and sent another lawyer in Mr. Washington's place (4 RR 35:18-36:3).

The Commission countered by introducing an appellate brief, filed by opposing counsel in the Gobert appeal, that suggested Mr. Washington failed to inform his opponent of the conflict (4 RR 66:25-67:6). It also argued that an email Mr. Washington's office sent the Monday after the Gobert's court Friday docket call proved that Mr. Washington did not attempt to contact the court on the day of the docket call itself (4 RR 40:17-41:13).

Similarly, on the point of whether Mr. Washington adequately informed Mr. Gobert and Ms. Randle, the parties offered dueling narratives. Mr. Washington testified that he gave Ms. Randle a copy of the case file whenever requested (4 RR 132:16-:23). Ms. Randle said that he did at one time, but that she did not receive any documents after 2008 (3 RR 30:9-:25). Mr. Washington testified that he informed Ms. Randle about the case—warts and all—whenever she asked (4 RR 131:18-134:11). Ms. Randle testified that he failed to keep her informed of the case's dismissal (3 RR 41:11-42:4). Mr. Washington testified that he informed both Mr. Gobert

and Ms. Randle of the case's trial setting (4 RR 50:7-:14), Mr. Gobert testified that Mr. Washington did not (4 RR 147:14-:16).

Given the contradictory nature of the testimony, it is unsurprising that the jury struggled to reach a verdict. A small push in Mr. Washington's favor likely would have changed the outcome as shown by the jury's ten-to-two verdict and the testimony of the presiding juror. *See Garcia v. Cent. Power & Light Co.*, 704 S.W.2d 734, 737 (Tex. 1986) ("Given these circumstances, and the ten-to-two verdict, we hold that this was a hotly contested trial which resulted in a materially unfair trial as a matter of law."). In particular, the presiding juror testified that multiple jurors were confused by the lack of information in the charge and questioned whether Mr. Gobert had committed perjury. (7 RR 146:12-:20). Had the Court properly allowed evidence of Mr. Washington's good character into this environment of confusion and distrust of the Commission's witnesses, the jury very likely would have decided differently.

In sum, given the limited and contradictory evidence, the Commission gained a profound strategic advantage by keeping from the jury Mr. Washington's outstanding reputation with the legal community. This exclusion created the misleading impression that Mr. Washington was

neglectful and untrustworthy, when his reputation could not have been more to the contrary. In this close case, the skewed impression created by the Court's erroneous exclusion of Mr. Washington's character for truthfulness probably led to the rendition of an improper judgment against Mr. Washington.

> ii. The compelling and overwhelming nature of the character testimony that Mr. Washington sought to introduce also demonstrates that exclusion of this evidence resulted in an improper judgment.

When the trial court refused to admit Mr. Washington's character witnesses, Mr. Washington created a bill of exception demonstrating what the testimony of the excluded witnesses would have been (4 RR 223:5-228:12). The trial court heard testimony from only one witness in the bill of exception, but it accepted the parties' stipulation that, if permitted, Mr. Washington "[would have] call[ed] a series of . . . individuals [who] would [have] provide[d] substantially similar testimony about Mr. Washington's character and reputation for truth and veracity, honesty and plain dealing" (*see* 4 RR 228:14-:24).

As it was, the one witness who testified for Mr. Washington's bill of exception delivered powerful and compelling testimony about Mr.

Washington's outstanding reputation for veracity that—if presented to the jury and echoed by a series of subsequent witnesses—almost certainly would have changed the jury's verdict.

Specifically, the witness testified that:

> ➢ "[P]eople in the community, attorneys and clients and regular folks all have a very -- most everybody I know thinks highly of [Mr. Washington]. Thinks highly of his integrity, his honesty, veracity" (4 RR 226:17-:23);

> ➢ "All the lawyers [the witness] know[s], which . . . [is] several hundred because of [her] career, all know [Mr. Washington] and all have good things to say about him. . . . [I]n the community he has a very good reputation [for truth and veracity]" (4 RR 225:3-:8);

> ➢ "Mr. Washington's character for truth and veracity" was "[v]ery good. . . . [Mr. Washington was] the only type of individual [the witness] chose to . . . surround herself with [because of his character]" (4 RR 224:14-:18);

> ➢ "[Mr. Washington is] a very truthful, honest individual. . . . [the witness] [n]ever hesitate[s] when he tells [her] something to take it as the truth" (4 RR 224:23-225:2).

The parties stipulated that a series of other witnesses would have delivered similarly effusive testimony about the reputation for honesty that Mr. Washington developed over his more than forty years in practice (4 RR 228:14-229:1).

Thus, the jury returned its verdict without the benefit of the positive character evidence that was admitted in the sanction phase of Mr. Washington's trial. This staggering outpouring of support for Mr. Washington demonstrates the nature and extent of the witnesses who would have established Mr. Washington's reputation to the jury—had the trial court properly permitted them to do so.

The witnesses who supported Mr. Washington during the sanctions phase included:

> At least eight of Mr. Washington's current and former clients (*see* 7 RR 48-48, 79-82, 99-106; 1 CR 221, 226-29);

> Former Galveston County District Court Judge Susan Criss, who described Mr. Washington's reputation in Harris and Galveston Counties as "Excellent" and said that he "set the standard . . . on fighting for those who need us the most" (7 RR 58:5-:14; 63:9-:14);

> The parole commissioner for the Texas Board of Parole and Pardons (1 CR 220);

> The general counsel to the County Attorney of Harris County, who has known Mr. Washington for forty-two years (7 RR 24:24-25:1);

> Mr. Washington's law partner of thirteen years, prior to Mr. Washington's election to the U.S. Congress (7 RR 35:21-36:5);

> A lawyer who officed with Mr. Washington for thirty-two years (7 RR 13:19-:23);

➢ A former attorney in the Galveston County District Attorney's office for whom Mr. Washington was a mentor and second father (7 RR 70:22-72:25);

➢ United States Congresswoman Eddie Bernice Johnson, who has known Mr. Washington for forty years and attested that "Mr. Washington is a man of great character, dignity, and ability" (1 CR 241);

➢ Texas State Senator John Whitmire who remarked that "[Mr.] Washington ha[d] dedicated his life to public service and helping others" (1 CR 242);

➢ Texas State Senator Rodney Ellis who called Mr. Washington "a court officer of the highest character" (1 CR 243);

➢ Harris County Commissioner El Franco Lee, who remarked that he had "known and worked . . . with Mr. Washington well over the past 40 years and kn[e]w well of his character and work ethic, professional abilities and his sense of fairness" (1 CR 244);

➢ Former National Football League player Michael Johnson (1 CR 25);

➢ A former supervisor for the DEA and undercover officer in the Harris County District Attorney's office who had known Mr. Washington for forty years (4 RR 84:19-85:12);

➢ Several other prominent attorneys and business people (*see* 1 CR 245-52).

In addition to these individuals who testified and wrote directly to the Court on Mr. Washington's behalf, other evidence established his

outstanding character and further demonstrated the overwhelming impact of erroneously excluding this evidence. For example, Mr. Washington introduced evidence that:

- United States District Court Judge Kenneth Hoyt, called Mr. Washington **"a warrior in and for the cause of justice"** (1 CR 238);

- United States District Court Judge Lynn Hughes, who has known Mr. Washington since the early 1970s, described him as **"Texas's improved version of Atticus Finch"** (1 CR 235-36);

- United States District Court Judge Vanessa Gilmore said that **"[h]e is by far one of the best trial lawyers [she] ha[s] ever seen".**

The erroneous exclusion of character evidence this enormous in scope and profound in character cannot be described as "harmless." This was a close case; the exclusion of Mr. Washington's character evidence created the misleading impression that he was a dishonest and aged solo practitioner who neglected his client and then lied in an attempt to save his license.

The testimony of the presiding juror established that the Commission's evidence—including certain material that by all accounts should not have entered the jury room—created exactly this misimpression. For example, at least one juror attributed Mr. Washington's

"neglect" to his age, saying that "people like that" are often "old and cocky or arrogant, set in their ways" (7 RR 139:8-:14). This juror also suggested that people like Mr. Washington "don't do their job the way they should because they've been doing [it] this way for so long" (7 RR 139:8-:14).

Had the trial court properly allowed Mr. Washington to introduce evidence of the esteem in which the shining stars of Texas's legal community held him, the jury almost certainly would have credited Mr. Washington's testimony over that of the complaining witnesses. The jury could not have dismissed him as "old and cocky or arrogant" if it had known that he was widely recognized as one of the most upstanding, ethical, and talented members of the Texas bar.

The categorical exclusion of Mr. Washington's character evidence from the jury thus very likely resulted in rendition of an improper judgment and requires granting Mr. Washington a new trial.

> 2. *The trial court harmfully erred by denying Mr. Washington's motion for new trial after inadmissible evidence of a prior suspension was provided to the jury during deliberations.*

Near the beginning of the Commission's case-in-chief, it sought to introduce a certification reflecting Mr. Washington's membership in the

36

Texas bar (*see* 3 RR 19-20; 8 RR Exh. 1, .pdf 9). Mr. Washington objected based upon the following statement in the center of the document:

> "The [Texas Supreme Court's] records further show, Craig A. Washington was suspended from the active rolls for non-payment of the Texas Attorney Occupation Tax and/or associated penalties or interest and was reinstated on the following dates respectively:

| SUSPENDED | REINSTATEMENT GRANTED |
|---|---|
| April 01, 1996 | April 16, 1996 |

(8 RR Exh. 1, .pdf 9).

Mr. Washington objected to this exhibit based upon "the very center of the document" and "ask[ed] that that portion be redacted" (3 RR 20:3-:9). Counsel for the Commission responded by agreeing that she "d[id]n't think the jury need[ed] to see it, frankly" (3 RR 20:17-:18). The trial judge also agreed that this prejudicial material should be kept from the jury, saying the document would be "admit[ted] for purposes of the record only" (3 RR 20:19-:23).

But despite the trial court sustaining Mr. Washington's objection and ruling that the jury should not see the prejudicial and inadmissible evidence of Mr. Washington's prior license suspension, the exhibit was nonetheless provided to the jury during deliberations (7 RR 138:21-139:2).

37

Allowing the jury to view this exhibit was harmful error, and the trial court erred in denying Mr. Washington's motion for new trial based upon this evidence being provided to the jury (CR 253 (preserving issue of improperly provided evidence in motion for new trial)).

    a.    The trial court erred by providing the jury with evidence of Mr. Washington's prior license revocation.

Texas Rule of Civil Procedure 281 provides that "[w]here only part of a paper has been read in evidence, the jury shall not take the same with them, unless the part so read to them is detached from that which was excluded." In this case, the jury was given Commission's Exhibit 1, a certificate of good standing that reflected Mr. Washington's suspension from practice in 1996.

This plainly violated not only the trial court's own ruling on the exhibit, but also Texas Rule of Civil Procedure 281 which limits exhibits that can be submitted to the jury to those to which they were exposed during trial. *None* of the Commission's certificate of good standing was tendered to the jury during trial because everyone (including the Court and the Commission) agreed that Mr. Washington's suspension was irrelevant. Because it was never admitted, it was also never explained. The

introduction of the prior suspension was highly prejudicial to Mr. Washington.

Under these circumstances, allowing the jury to learn of Mr. Washington's prior suspension was error necessitating a new trial. *See* Tex. R. Evid. 403.

> b. This error was harmful as shown by the juror's testimony.

Absent an objection, the presiding juror's testimony on the influence of the erroneously admitted evidence of Mr. Washington's suspension is properly considered in this Court's harmless error analysis. *See Redinger v. Living, Inc.*, 689 S.W.2d 415, 419 (Tex. 1985) (analyzing harmless error based upon juror testimony); *Tollett v. State*, 799 S.W.2d 256, 257 (Tex. Crim. App. 1990) ("In this case, two jurors testified at a hearing on a motion for new trial and described the jury's deliberations. The two testifying jurors also revealed some of the mental processes followed to arrive at the punishment verdict. Although all or part of the juror testimony adduced at the Motion for New Trial hearing may have been objectionable, no suitable objection was lodged by the State and the evidence is now before us.").

In this case, the Commission did not object to any of the presiding juror's testimony cited below, so this Court should consider that testimony when determining the harmfulness of the erroneously admitted suspension evidence.

Specifically, when asked how introduction of Mr. Washington's suspension impacted the deliberations, the presiding juror testified—without objection—that the impact "was . . . stunning" (7 RR 139:5). The juror explained that "as a result of [the suspension], a juror made a stunning derogative statement regarding age and ability" (7 RR 139:3-:7). Attempting to "be as close to verbatim as [she could]," the presiding juror described a fellow juror's opinion that the suspension was typical of "people like [Mr. Washington]" who "tend to get old and cocky or arrogant, set in their ways" (7 RR 139:8-:14).

The suspension, according to at least one member of the jury, evidenced a broader perception that Mr. Washington, and people like him, "don't do their job the way they should because they've been doing it this way for so long" (*id.*).

The presiding juror further testified that the issue of the suspension came up both at the outset of deliberations and later, impacting deliberations in the case (7 RR 15-:25).

Given the prejudice against Mr. Washington that the unexplained evidence of suspension caused on the jury panel, introduction of that evidence was not harmless. To the contrary, the admission of the suspension evidence required a new trial and the trial court erred by failing to grant one.

3. *The trial court harmfully erred in overruling Mr. Washington's objections to the Commission's proposed jury charge because these instructions provided no standard by which the jury could evaluate Mr. Washington's conduct.*

When considering charge error, "[this Court] must look at the court's charge as practical experience teaches that a jury, untrained in the law, would view it." *Columbia Rio Grande Healthcare, L.P. at* 862. "It asks too much of lay jurors," to distill complex legal concepts into an undefined broad form submission. *See id.* Statements from lawyers as to the law do not take the place of instructions from the judge as to the law. *Id.* It is therefore the trial court's prerogative and duty to instruct the jury on the applicable law. *Id.* Thus, "the goal of the charge is to submit to the jury the

issues for decision logically, simply, clearly, fairly, correctly, and completely." *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999).

The trial court's careful execution of this task is particularly important in lawyer discipline cases where, according to some appellate courts, "interpretation of the disciplinary rules is a question of law for the trial court, and therefore expert testimony is not required." *Goldstein v. Comm'n for Lawyer Discipline*, 109 S.W.3d 810, 815 (Tex. App.—Dallas 2003, pet. denied). With the trial judge as the only expert in the room, a charge that properly limits the jury to factual determinations—rather than unbridled construction of the disciplinary rules—is essential.

a. The trial court erred by overruling Mr. Washington's charge objections based upon the lack of any meaningful standard to guide the jury.

In this case, the trial court overruled Mr. Washington's objection to a charge that entirely failed to define the applicable legal standard by which the jury was to evaluate Mr. Washington's conduct (2 RR 9:25-10:4). For example, the charge asked whether Mr. Washington kept Mr. Gobert and Ms. Randle "reasonably informed about the status of a matter," but provided no legal measuring stick by which the jury could determine this

42

issue (1 CR 141). The untrained lay jury had no basis—nor did the Commission provide one—by which to know what level of information was reasonable.

The charge asked whether Mr. Washington "promptly complied with reasonable requests for information" but provided no guidance as to what was prompt and what was reasonable (1 CR 142). The jury was asked whether Mr. Washington failed to surrender papers to which Mr. Gobert "was entitled" at the "termination of [the] representation" (1 CR 143). How the jury was to know what papers Mr. Gobert was entitled to is anyone's guess because neither the charge, the court, nor the Commission's witnesses provided any guidance whatsoever on this topic. Indeed, the jury's questions revealed that it could not even determine when the representation terminated (2 CR 15).

Proper questions for the jury should have addressed the disputed factual issues in the case, like whether Mr. Washington informed Mr. Gobert and Ms. Randle about the upcoming trial setting, dismissal, and motion to reinstate. The parties hotly disputed these factual issues, but the questions submitted to the jury provide no basis whatsoever for determining the findings of these issues. Instead, the responses reveal that

43

ten jurors believed that the information Mr. Washington provided about Mr. Gobert's case status—whatever that information was—was "unreasonable"—whatever that means.

In this way, the questions submitted to the jury impermissibly and inseparably mingled underlying factual disputes (on which the jury's findings were essential) with legal determinations (about which the jury had no basis whatsoever to opine). It was the trial court's duty to interpret the Disciplinary Rules, *see Goldstein*, 109 S.W.3d at 815, not to tender them to the jury without any context or testimony from which the jury could reasonably determine their meaning.

Submitting instructions in this way prevented the jury from meaningfully addressing the factual issues in the case and the trial court therefore erred by overruling Mr. Washington's charge objections.

b.      This charge error was harmful.

Charge error is generally considered harmful if it relates to a contested, critical issue. *Columbia Rio Grande Healthcare at* 856. In this case, the presiding juror specifically testified—without objection—that the instructions provided insufficient information and required the jury to speculate in order to render its verdict (7 RR 144:23-145:6).

The presiding juror also explained—without objection—that had the jury actually understood the determinations that it was called upon to make "the outcome would have been different on several questions that were asked of the jury" (7 RR 148:19-149:1). The presiding juror's testimony demonstrates that the jury did not understand the court's charge, was forced to speculate, and its verdict would have been different had it been adequately instructed (*see* 7 RR 140:1-155:21). Under these circumstances, the overruling of Mr. Washington's objections to the charge was harmful.

> 4. *Even if any of the above errors could be considered harmless— which is not the case—their cumulative effect requires giving Mr. Washington a new trial.*

"The supreme court has long recognized the doctrine of cumulative error." *Univ. of Texas at Austin v. Hinton*, 822 S.W.2d 197, 205 (Tex. App.— Austin 1991, no writ) *citing Smerke v. Office Equip. Co.*, 138 Tex. 236, 158 S.W.2d 302, 305 (1941). Under this doctrine, "[a] reviewing court may reverse a lower-court judgment under the cumulative-error doctrine when the record shows a number of instances of error, no one instance being sufficient to call for a reversal, yet all the instances taken together may do so." *Id*. (internal quotations omitted).

In this case, even if the Court determines that some of the errors discussed above were harmless, their combined effect requires reversal. In particular, the denial of Mr. Washington's request to introduce character evidence combined with the erroneous admission of the prior suspension to create a profoundly misleading impression about Mr. Washington's credibility and capacity as a lawyer.

Rather than viewing Mr. Washington for his decades of service to Texas's most vulnerable litigants, the jury saw him as "old and cocky or arrogant, [and] set in [his] ways" based upon the prior suspension (7 RR 139:8-:14). This stark misimpression created through the combination of evidence erroneously admitted and erroneously excluded requires granting Mr. Washington a new trial.

## B. Mr. Washington is entitled to a new trial on the issue of his sanction.

Mr. Washington is entitled to a new trial on the issue of the sanction that the trial court imposed for two reasons. First, the trial court improperly denied Mr. Washington his right to a jury on the issue of the sanction as required by the Texas Rules of Disciplinary Procedure and the

Texas Rules of Civil Procedure. Second, the trial court's sanction on Mr. Washington was excessive.

> 1. *The trial court harmfully erred in denying Mr. Washington a jury trial on the issue of his sanction.*

Mr. Washington expressly invoked his right to have a jury determine his sanction, (1 CR 105; 2 RR 4:16-5:25), and the trial court erred in overruling that request.

As this Court recently explained, the "right to a jury trial as guaranteed by our Constitution is one of our most precious rights and the denial of that right is a very serious matter." *G.W. v. Texas Dep't of Family & Protective Services*, No. 03-14-00580-CV, 2015 WL 658466, at *2 (Tex. App.— Austin Feb. 11, 2015, no pet.) (internal quotation omitted). Thus, "[r]estrictions placed on the right to a jury trial will be subjected to the utmost scrutiny." *Id.*

The sacrosanct status of the jury trial extends to attorney discipline proceedings through several sources. The Government Code forbids the adoption or promulgation of any rule abrogating the right to a jury trial by an accused in a disbarment proceeding. *See* Tex. Gov't Code Ann. 81.077. The Supreme Court has also codified this requirement for all attorney

47

discipline actions in Texas Rule of Disciplinary Procedure 3.06. And Texas Rule of Disciplinary Procedure 3.08 also mandates affording jury rights in disciplinary proceedings. Under that rule, the Texas Rules of Civil Procedure—and the broad jury right of the Texas Constitution incorporated therein—[8] the right to a jury applies in disciplinary proceedings, absent some exception in the Rules of Disciplinary Procedure themselves. *See* Tex. R. Civ. P. 216 (providing right to a jury trial when fee paid).

As a result of the ample authority dictating the availability of a jury trial to determine disciplinary sanctions, at least one court has held that denial of a jury on this issue constituted error. *See Hanners v. State Bar of Texas*, 860 S.W.2d 903, 910-11 (Tex. App.—Dallas 1993, writ dism'd). In *Hanners*, an attorney in a disciplinary proceeding argued "that he was entitled to a jury trial on the amount of restitution and attorney's fees ordered by the court because these amounts are unliquidated damages." *Id.* at 910.

---

[8] *See Trapnell v. Sysco Food Services, Inc.*, 850 S.W.2d 529, 544 (Tex. App.—Corpus Christi 1992), *aff'd*, 890 S.W.2d 796 (Tex. 1994) (describing the right to a jury trial reserved to the people in art. V. § 10 of the Texas Constitution as "significantly broader than that granted in the Seventh Amendment.").

The appellate court agreed, noting that Rule of Disciplinary Procedure 3.08 expressly adopted the Rules of Civil Procedure and Texas Rule of Civil Procedure 243 mandates a jury trial on issues of unliquidated damages.[9] *Id.* at 910-11. Thus, the court held that, even though the case involved a default judgment, the attorney preserved his right to a jury trial on the issue of the State Bar's attorney's fees by requesting a jury and paying the proper fee. *Id.*

The mere fact that Rule of Disciplinary Procedure 3.10 states that "the court" rather than the jury, "shall consider" certain factors in determining sanctions does not change this result. Indeed, many limits exist on court discretion that cannot be said to implicitly abrogate jury rights. For example, the Code of Criminal Procedure imposes upon "the court" certain sentencing obligations related to victim impact statements. *See, e.g.*, Tex. Crim. Proc. Code Ann. § art. 56.03. In particular, it requires that "[p]rior to the imposition of a sentence . . . the court shall . . .consider the information provided in the [victim-impact] statement."

---

[9] Texas Rule of Civil Procedure 243 provides that "[i]f the cause of action is unliquidated or be not proved by an instrument in writing, the court shall hear evidence as to damages and shall render judgment therefor, unless the defendant shall demand and be entitled to a trial by jury in which case the judgment by default shall be noted, a writ of inquiry awarded, and the cause entered on the jury docket."

But no one would seriously argue that this requirement on the court's sentencing consideration implicitly abrogates the right of a criminal defendant to have a jury determine punishment. *See Ivey v. State*, 250 S.W.3d 121, 124 (Tex. App.—Austin 2007), *aff'd*, 277 S.W.3d 43 (Tex. Crim. App. 2009) ("It is well-established that a defendant's right to have a jury assess punishment is a statutory right . . . ."). Rather, like the factors applicable to disciplinary sanctions, victim impact requirements inform the court's sentencing determination only when a jury does not determine punishment.

In short, the Rules of Disciplinary Procedure dictate that a jury may determine the scope of sanctions in a disciplinary proceeding by both incorporating the Texas Rules of Civil Procedure and expressly saying so. Mr. Washington requested that a jury determine his sanction in this case, and the trial court erred in denying that request.

### 2. *The trial court imposed an excessive sanction.*

The sanction in a disciplinary proceeding may be so light, or so heavy, as to constitute an abuse of discretion. *Kilpatrick*, 874 S.W.2d at 659. And determining a sanction requires that the trial court consider, among other factors, relevant evidence concerning the attorney's personal and

professional background. *See* Tex. R. Disc. P. 3.10(L). Given the voluminous evidence of Mr. Washington's exemplary reputation, *see* section II.A.1.C.ii, above, the trial court abused its discretion by imposing the suspension that it did. Given Mr. Washington's stellar reputation, the trial court's four-year suspension, including one year of active suspension and conditions on Mr. Washington's ability to practice like (1) the assignment of a "caretaker," (2) regular inspections of Mr. Washington's office to ensure compliance, and (3) the payment of $25,000 in attorneys' fees for the Commission, was excessive (1 SCR 4-11; CR 319-323).

## Prayer

Craig A. Washington asks this Court to reverse the trial court's judgment and grant him a new trial along with any other relief to which he has shown himself entitled.

Respectfully submitted,

*/s/ Michael A.Stafford*

Michael A. Stafford
    Texas Bar No. 18996970
    mstafford@gardere.com
Katharine D. David
    Texas Bar No. 24045749
    kdavid@gardere.com
Stacy R. Obenhaus
    Texas Bar No. 15161570
    sobenhaus@gardere.com
John MacVane
    Texas Bar No. 24085444
    jmacvane@gardere.com

Gardere Wynne Sewell LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002
Tel: 713.276.5500
Fax: 713.276.5555

COUNSEL FOR APPELLANT
CRAIG A. WASHINGTON

# Certificate of Service

I certify that this document was served on the following counsel on August 17, 2015, through this court's electronic filing/service system:

Cynthia Canfield Hamilton
Office of the Chief Disciplinary Counsel
State Bar of Texas
Post Office Box 12487
Austin, Texas 78711
chamilton@texasbar.com

/s/ John MacVane
John MacVane

# Certificate of Compliance

I certify that this document contains 9,953 words, apart from those parts of the brief excluded by Texas Rule of Appellate Procedure 9.4(i)(1). I relied on the computer program used to prepare the document to determine the number of words.

/s/ John MacVane
John MacVane

# Appendix A

*Judgment of Partially Probated Suspension*, signed January 8, 2015
(1 SCR 4-11)

A

| COMMISSION FOR LAWYER | § | IN THE DISTRICT COURT OF |
| DISCIPLINE | § | |
| | § | |
| V. | § | BASTROP COUNTY, TEXAS |
| | § | |
| CRAIG A. WASHINGTON | § | 335th JUDICIAL DISTRICT |

## JUDGMENT OF PARTIALLY PROBATED SUSPENSION

### Parties and Appearance

On December 2, 3 and 4, 2014, the above-entitled and numbered case was called by the Court with the Honorable George Gallagher presiding pursuant to his appointment by the Supreme Court of Texas as set forth in Rule 3.02 of the Texas Rules of Disciplinary Procedure. Petitioner, the Commission for Lawyer Discipline ("Petitioner"), appeared through counsel, Judith Gres DeBerry, and announced ready. Respondent, Craig A. Washington ("Respondent"), Texas Bar Number 20901000, appeared by and through his attorney of record, Kevin Hall, and announced ready.

### Jurisdiction and Venue

The Court finds that Respondent was an attorney licensed to practice law in Texas at the time of the filing of this disciplinary cause of action. The Court finds that it has jurisdiction over the parties and the subject matter of this action and that venue is proper in Bastrop County, Texas.

### Professional Misconduct

The case proceeded to trial before a jury of twelve (12) duly qualified and selected jurors. After due deliberation, on December 4, 2014, the jury returned a verdict. Based on the jury's

Filed JAN 12 2015 am
Sarah Loucks
District Clerk, Bastrop County

Scanned

4

verdict, the Court finds that the acts, omissions, and conduct of Respondent, Craig A. Washington, constitute violations of Rules 1.01(b)(1), 1.03(a), 1.15(d), and 8.04(a)(3) of the Texas Disciplinary Rules of Professional Conduct. As to each such violation, the Court finds that Respondent, Craig A. Washington, has committed professional misconduct as defined in Rule 1.06(V) of the Texas Rules of Disciplinary Procedure. The Charge of the Court and the verdict of the jury are incorporated in this Judgment by reference for all purposes as if fully set forth at length and attached hereto as Exhibit "A".

## Judgment of Suspension

As to each such act of misconduct, the Court finds that the appropriate discipline is a suspension from the practice of law in the State of Texas for a period of four (4) years, with eighteen (18) months of said suspension to be an active suspension, and thirty (30) months of said suspension to be probated, upon the terms and conditions set forth below.

IT IS, ACCORDINGLY, ORDERED, ADJUDGED, AND DECREED, that Respondent, Craig A. Washington, State Bar No. 20901000, be and is hereby suspended from the practice of law in Texas, for a period of four (4) years, with eighteen (18) months of said suspension to be an active suspension, and thirty (30) months of said suspension to be probated, upon the terms and conditions more fully set forth below. Respondent's active suspension shall begin on January 15, 2015, and end on July 14, 2016. If Respondent complies with all of the following terms and conditions timely, the thirty (30) month period of probated suspension shall begin on July 15, 2016, and end on January 14, 2019, during which time Respondent shall be entitled to practice law in the State of Texas, subject to the following terms and conditions.

5

## Terms and Conditions

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that during the term of active suspension herein ordered, Respondent, Craig A. Washington, shall be prohibited from practicing law in Texas, holding himself out as an attorney at law, performing any legal services for others, accepting any fee directly or indirectly for legal services, appearing as counsel or in any representative capacity in any proceeding in any Texas or Federal court or before any administrative body, or holding himself out to others or using his name, in any manner, in conjunction with the words "attorney at law," "attorney," "counselor at law," or "lawyer." This includes the prohibition against Respondent advertising in any form, including but not limited to the internet, as an "attorney," "attorney at law," "counselor at law," or "lawyer."

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that Respondent, Craig A. Washington, on or before January 15, 2015, shall notify each of his current clients and opposing counsel in writing of this suspension. In addition to such notification, Respondent is ORDERED to return any files, papers, unearned money, and other property belonging to clients in the Respondent's possession to the respective clients or to another attorney at the client's request. Respondent is ORDERED to file with the Statewide Compliance Monitor, Office of the Chief Disciplinary Counsel, P.O. Box 12487, Austin, Texas 78711 (1414 Colorado St., Austin, Texas 78701), on or before January 15, 2015, an affidavit stating that all current clients and opposing counsel have been notified of the Respondent's suspension and that all files, papers, money and other property belonging to all clients have been returned as ordered herein.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Respondent shall, on or before January 15, 2015, notify in writing each and every justice of the peace, judge, magistrate, and chief justice of each and every court in which Respondent has any matter

6

pending of the terms of this Judgment, the style and cause number of the pending matter(s), and the name(s), address(es) and telephone number(s) of the client(s) Respondent is representing in Court. Respondent is ORDERED to file with the Statewide Compliance Monitor, Office of the Chief Disciplinary Counsel, P.O. Box 12487, Austin, Texas 78711 (1414 Colorado St., Austin, Texas 78701), on or before January 15, 2015, an affidavit stating that he has notified in writing each and every justice of the peace, judge, magistrate, and chief justice of each and every court in which Respondent has any matter(s) pending of the terms of this Judgment, the style and cause number(s) of the pending matter(s), and the name(s), address(es) and telephone number(s) of the client(s) Respondent is representing in Court.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Respondent, Craig A. Washington, shall, on or before January 15, 2015, surrender his Texas law license and permanent State Bar Card to the Statewide Compliance Monitor, Office of the Chief Disciplinary Counsel, P.O. Box 12487, Austin, Texas 78711, for transmittal to the Clerk of the Supreme Court of Texas. In the event Respondent's law license or State Bar Card cannot be located, Respondent, Craig A. Washington, shall, on or before January 15, 2015, file an affidavit with the Statewide Compliance Monitor, Office of the Chief Disciplinary Counsel, P.O. Box 12487, Austin, Texas 78711, stating that his law license and/or State Bar Card cannot be located.

Should Respondent fail to comply with all of the above terms and conditions timely, Respondent shall remain actively suspended until the date of compliance or until January 14, 2019, whichever occurs first.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that as an additional sanction arising from Respondent's professional misconduct, the State Bar of Texas shall have judgment against Respondent for reasonable and necessary attorneys' fees and expenses of

7

litigation in the amount of $24,693.74 (twenty-four thousand six hundred and ninety-three dollars and 74/100). The payment of attorneys' fees and direct expenses shall be made in monthly installments of $823.12 beginning the first month following the end of the active suspension period. Each installment is due on the 1st day of the month, beginning on August 1, 2016, with the final installment in the amount of $823.12 due on January 1, 2019. The payments shall be made by certified or cashier's check or money order made payable to the State Bar of Texas and delivered to the Statewide Compliance Monitor, Office of the Chief Disciplinary Counsel's Office, P.O. Box 12487, Austin, Texas 78711-2487 (1414 Colorado St., Austin, Texas 78701).

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all amounts ordered herein are due to the misconduct of Respondent, and are assessed as a part of the sanction in accordance with Rule 1.06(W) of the Texas Rules of Disciplinary Procedure. Any amount not paid shall accrue interest at the maximum legal rate per annum until paid, and the State Bar of Texas shall have all writs and other post-judgment remedies against Respondent in order to collect all unpaid amounts.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that in addition to complying with the Minimum Continuing Legal Education (MCLE) requirements of the State Bar of Texas, Respondent shall complete five (5) additional hours of continuing legal education in the area of Ethics. These additional hours of CLE are to be completed during the first year following the active portion of the suspension, beginning July 15, 2016, and completed on or before July 14, 2017. Within ten (10) days of the completion of these additional CLE hours, Respondent shall verify completion of the course to the State Bar of Texas by delivering written

8

notice to the Statewide Compliance Monitor, Office of the Chief Disciplinary Counsel's Office, P.O. Box 12487, Austin, Texas 78711-2487 (1414 Colorado St., Austin, Texas 78701).

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that during all periods of suspension, active or probated, Respondent shall be under the following terms and conditions:

1. Respondent shall not violate any term of this Judgment.

2. Respondent shall not be found guilty of, or plead "no contest" to, any intentional or serious crime, barratry, or any crime involving moral turpitude or any misdemeanor or felony involving theft, embezzlement, or fraudulent misappropriation of money of property, nor violate the laws of the United States or any other State other than minor traffic violations.

3. Respondent shall not violate any of the provisions of the Texas Disciplinary Rules of Professional Conduct.

4. Respondent will maintain a current status regarding occupation tax and membership fees in accordance with Article III of the State Bar Rules.

5. Respondent shall comply with Minimum Continuing Legal Education (MCLE) requirements in accordance with Article III of the State Bar Rules.

6. Respondent shall comply with Interest on Lawyers Trust Account (IOLTA) requirements in accordance with Article III of the State Bar Rules.

7. Respondent shall keep the State Bar of Texas Membership Department and the Office of the Chief Disciplinary Counsel notified of his current business and home addresses, and telephone numbers, and shall send notice, within ten (10) days of any change in address or telephone number.

8. Respondent shall promptly respond to any request for information from the Chief Disciplinary Counsel in connection with any investigation of any allegations of professional misconduct.

9. Respondent shall cooperate fully with the Chief Disciplinary Counsel's Office of the State Bar of Texas in its efforts to monitor compliance with the terms and conditions of this Judgment.

### Motion to Revoke Probation

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that if evidence arises that

Respondent has committed professional misconduct or has violated any term of this judgment,

9

the State Bar of Texas may, in addition to all other remedies available, file a motion to revoke probation with the District Court in the County of Respondent's residence or place of practice and serve a photocopy of the Motion on Respondent pursuant to Tex.R.Civ.P. 21a.

The Court shall, without the aid of a jury and within thirty (30) days of service of the motion upon Respondent, conduct an evidentiary hearing. At the hearing, the Court shall determine by a preponderance of the evidence whether Respondent has violated any term or condition of probation of this Judgment. If the Court finds that Respondent has committed acts of professional misconduct during the period of probated suspension or violated any term of this probation or this Judgment, the Court shall enter an Order revoking probation and placing Respondent on active suspension from the date of such revocation order. Upon revocation, Respondent shall be actively suspended for the full four-year term of suspension and shall not be given credit for any term of probation served prior to the revocation. An order revoking probation may not be superseded or stayed.

IT IS FURTHER ORDERED that any conduct on the part of Respondent which serves as the basis for a motion to revoke probation may also be brought as independent grounds for discipline as allowed under the Texas Disciplinary Rules of Professional Conduct and Texas Rules of Disciplinary Procedure and/or the State Bar Rules.

IT IS FURTHER ORDERED that this suspension shall be made a matter of public record and shall be published in the Texas Bar Journal.

IT IS FURTHER ORDERED that the Clerk of this court shall forward a certified copy of Petitioner's Second Amended Disciplinary Petition on file herein, along with a certified copy of this judgment, to the Clerk of the Supreme Court of Texas, Supreme Court Building, P.O. Box 12248, Austin, Texas 78711, and to the Office of the Chief Disciplinary Counsel, P.O. Box

10

12487, Austin, Texas 78711.

All requested relief not expressly granted herein is expressly denied.

SIGNED this ___8___ day of ___January___ 2015

_George Gallagher_
**HONORABLE GEORGE GALLAGHER**
**JUDGE PRESIDING**


**APPROVED AS TO FORM**

_____
Kevin Hall
Attorney for Respondent


**APPOVED AS TO FORM & SUBSTANCE**

_____
Judith Gres DeBerry
Attorney for Petitioner

11

# Appendix B

*Order on Respondent's Motion for New Trial and Motion for Stay of Judgment Pending Appeal*, signed March 12, 2015
(CR 319-23)

B

NO. 29,123

| COMMISSION FOR LAWYER DISCIPLINE | § | IN THE 335TH JUDICIAL |
| VS. | § | DISTRICT COURT |
| CRAIG A. WASHINGTON | § | BASTROP COUNTY, TEXAS |

## ORDER ON RESPONDENT'S MOTION FOR NEW TRIAL AND MOTION FOR STAY OF JUDGMENT PENDING APPEAL

On the 10th day of March, 2015, the Court heard Respondent's Motion for New

Trial and Motion for Stay of Judgment Pending Appeal. The Court, having heard the

evidence, arguments of counsel, and considered the pleadings on file, enters the

following orders:

The Motion for New Trial is GRANTED in part and DENIED in part, and

AMENDS the Judgment of Partially Probated Suspension (hereinafter referred to as

"Judgment") as follows:

Scanned

FILED
DATE 3-12-15
Sarah Loucks
District Clerk, Bastrop County

319

suspension has expired. Counsel for Respondent, Mr. Brad Beers, shall inspect the

office of Respondent on a monthly basis to ensure no client files are retained by

Respondent and his staff and shall file a monthly affidavit with the Statewide

Compliance Office detailing that Counsel for Respondent has audited the office of

Respondent and that no client files are maintained or controlled in the office of

Respondent.

Scanned

320

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Respondent, Craig A. Washington, on or before March 31, 2015, shall file with the Statewide Compliance Monitor, a complete accounting of all funds maintained in accounts used or maintained by Respondent in his professional practice, including, but not limited to, his operating and trust accounts. The accounting of the trust account, if any, shall detail the amount of monies currently held by Respondent on behalf of all clients and shall identify the respective amount of monies currently held by Respondent for each respective client. Counsel for Respondent, Mr. Brad Beers, shall also file with the Statewide Compliance Office, on or before March 31, 2015, an affidavit confirming that any client who has funds deposited in Respondent's trust account have been notified that they have monies on deposit with Respondent and that they may have the monies returned if the client desires to employ new counsel.

Scanned

321

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment granted in favor of the State Bar of Texas for reasonable and necessary attorney's fees is MODIFIED as follows. The payment of attorney's fees and direct expenses previously ordered shall be made in monthly installments of $685.93 beginning on February 1, 2016 and continuing on the first day of each month thereafter until the balance is paid in full. Payment shall be made as previously ordered in the Court's order of January 8, 2015.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Respondent, Craig A. Washington, during the period of the probated suspension, shall only provide representation to clients in criminal proceedings.

THE COURT WILL NOT TOLERATE ANY DEVIATIONS OR FAILURE TO PROMPTLY COMPLY WITH THESE ORDERS.

The Court expressly reserves the right to impose any additional sanctions against any party who fails to promptly comply with this order and the "Judgment."

Scanned

322

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all other orders previously entered in the "Judgment" of January 8, 2015 shall remain in full force and effect except for those orders in conflict with the terms of the order of this date.

IT IS FURTHER ORDERED that the Motion for Stay of Judgment Pending Appeal is DENIED.

All requested relief not expressly granted herein is expressly denied.

SIGNED this 12th day of March, 2015.

_George Gallagher_
JUDGE PRESIDING

Scanned

# Appendix C

*Charge of the Court*, signed December 4, 2015
(CR 137-45)

C

CAUSE NO. 28,381

| COMMISSION FOR LAWYER | § | IN THE DISTRICT COURT OF |
|---|---|---|
| DISCIPLINE | § | |
| | § | |
| V. | § | BASTROP COUNTY, TEXAS |
| | § | |
| CRAIG A. WASHINGTON | § | 335th JUDICIAL DISTRICT |

## CHARGE OF THE COURT

**LADIES AND GENTLEMEN OF THE JURY:**

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions which have previously been given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

1. Do not let bias, prejudice or sympathy play any part in your deliberations.

2. In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the Court, that is, what you have seen and heard in this courtroom, together with the law as given you by the Court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3. Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4. You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers.

5. You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a

Scanned

certain question one way if others will agree to answer another question another way.

6.   Unless otherwise instructed, you may answer a question upon the vote of ten or more jurors. If you answer more than one question upon the vote of ten or more jurors, the same group of at least ten of you must agree upon the answers to each of those questions.

These instructions are given to you because your conduct is subject to review the same as that of the witnesses, parties, attorneys and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence unless otherwise instructed. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No." The term "preponderance of the evidence" means the greater weight and degree of credible evidence admitted in this case. Whenever a question requires an answer other than "Yes" or "No," your answer must be based on a preponderance of the evidence unless otherwise instructed.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror:

1.      to preside during your deliberations,

2.      to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge,

3.      to write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the judge,

4.      to vote on the questions,

5.      to write your answers to the questions in the spaces provided, and

6.      to certify to your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

SIGNED at **9:05** o'clock **A**.m., this **4** day of **December**, 2014.

George Gallagher
Honorable George Gallagher
Specially Assigned Judge

FILED 9:15A M
DATE 12-04-2014
Sarah Loucks
District Clerk, Bastrop County

139

1.01(b)(1)

## QUESTION NO. 1

In representing Michael Gobert, did Craig A. Washington neglect a legal matter entrusted to him?

You are instructed that, for the purpose of this question, the term "neglect" signifies inattentiveness involving a conscious disregard for the responsibilities owed to a client.

Answer "Yes" or "No."

Answer: YES

~~No~~

Melissa Rockel

~~Melissa Rockel~~

Erika Calhoun

Source: Tex. Disciplinary R. of Prof'l Conduct; Tex. Gov't Code Ann., tit.2, subtit. G, app. A (Vernon 2005).

140

1.03(a)

## QUESTION NO. 2-A

Did Craig Washington fail to keep Michael Gobert reasonably informed about the status of a matter?

Answer "Yes" or "No."

Answer: **YES**

Did Craig Washington fail to keep Sherry (Randle) Carter reasonably informed about the status of a matter?

Answer "Yes" or "No."

Answer: **YES**

Source: Tex. Disciplinary R. of Prof'l Conduct; Tex. Gov't Code Ann., tit.2, subtit. G, app. A (Vernon 2005).

141

1.03(a)

## QUESTION NO. 2-B

Did Craig Washington fail to promptly comply with reasonable requests for information from Michael Gobert?

Answer "Yes" or "No."

Answer: YES

Did Craig Washington fail to promptly comply with reasonable requests for information from Sherry (Randle) Carter?

Answer "Yes" or "No."

Answer: YES

Source: Tex. Disciplinary R. of Prof'l Conduct; Tex. Gov't Code Ann., tit.2, subtit. G, app. A (Vernon 2005).

142

1.15(d)

## QUESTION NO. 3

Upon the termination of Craig A. Washington's representation of Michael Gobert, did Washington fail to surrender papers to which Michael Gobert was entitled?

Answer "Yes" or "No."

Answer: YES

Source: Tex. Disciplinary R. of Prof'l Conduct; Tex. Gov't Code Ann., tit.2, subtit. G, app. A (Vernon 2005).

143

8.04(a)(3)

## QUESTION NO. 4

Did Craig Washington engage in conduct involving dishonesty, deceit, or misrepresentation?

Answer "Yes" or "No."

Answer: YES

Source: Tex. Disciplinary R. of Prof'l Conduct; Tex. Gov't Code Ann., tit.2, subtit. G, app. A (Vernon 2005).

144

# CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

(To be signed by the presiding juror if the jury is unanimous.)

_____
Signature of Presiding Juror

_____
Printed Name of Presiding Juror

(To be signed by those rendering the verdict if the jury is not unanimous.)

Signature:

1. Bernard Collins
2. Sharon Luther
3. Marisol Garcia
4. Patricia D.
5. Detrice Hyder
6. [signature]
7. Della a. Ott
8. David Baquera
9. [signature]
10. [signature]
11. _____

Printed Name:

1. Bernard Collins
2. Sharon Luther
3. Marisol Garcia
4. Patricia D Gallazo
5. Detrice Hyder
6. Jay Vanden Bos
7. Della A. Ott
8. David Baquera
9. Gregory A. Davidson
10. William Val DeCamp
11. _____

Received in open court at 3:10 o'clock p.m., this 4th day of December 2014.

_____
George Gallagher
Honorable George Gallagher
Specially Assigned Judge

# Appendix D

Text of Texas Rule of Evidence 404

**Rule 404. Character Evidence; Crimes or Other Acts**

**(a) Character Evidence.**

*(1) Prohibited Uses.* Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

*(2) Exceptions for an Accused.*

**(A)**    In a criminal case, a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it.

**(B)**    In a civil case, a party accused of conduct involving moral turpitude may offer evidence of the party's pertinent trait, and if the evidence is admitted, the accusing party may offer evidence to rebut it.

*(3) Exceptions for a Victim.*

**(A)**    In a criminal case, subject to the limitations in Rule 412, a defendant may offer evidence of a victim's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it.

**(B)**    In a homicide case, the prosecutor may offer evidence of the victim's trait of peacefulness to rebut evidence that the victim was the first aggressor.

**(C)**    In a civil case, a party accused of assaultive conduct may offer evidence of the victim's trait of violence to prove self-defense, and if the evidence is admitted, the accusing party may offer evidence of the victim's trait of peacefulness.

D

*(4) Exceptions for a Witness.* Evidence of a witness's character may be admitted under Rules 607, 608, and 609. (5) Definition of "Victim." In this rule, "victim" includes an alleged victim.

# Appendix E

Text of Texas Rule of Evidence 608

**Rule 608. A Witness's Character for Truthfulness or Untruthfulness**

**(a) Reputation or Opinion Evidence.** A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

**(b) Specific Instances of Conduct.** Except for a criminal conviction under Rule 609, a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness.

# Appendix F

Text of Texas Rule of Civil Procedure 281

# RULE 281. PAPERS TAKEN TO JURY ROOM

With the court's permission, the jury may take with them to the jury room any notes they took during the trial. In addition, the jury may, and on request shall, take with them in their retirement the charges and instructions, general or special, which were given and read to them, and any written evidence, except the depositions of witnesses, but shall not take with them any special charges which have been refused. Where only part of a paper has been read in evidence, the jury shall not take the same with them, unless the part so read to them is detached from that which was excluded.

# Appendix G

Text of Texas Rule of Disciplinary Procedure 308

**3.08. Additional Rules of Procedure in the Trial of Disciplinary Actions:** In all Disciplinary Actions brought under this part, the following additional rules apply:

A.     Disciplinary Actions are civil in nature.

B.     Except as varied by these rules, the Texas Rules of Civil Procedure apply.

C.     Disciplinary Actions must be proved by a preponderance of the evidence.

D.     The burden of proof in a Disciplinary Action seeking Sanction is on the Commission. The burden of proof in reinstatement cases is upon the applicant.

E.     The parties to a Disciplinary Action may not seek abatement or delay of trial because of substantial similarity to the material allegations in any other pending civil or criminal case.

F.     The unwillingness or neglect of a Complainant to assist in the prosecution of a Disciplinary Action, or a compromise and settlement between the Complainant and the Respondent, does not alone justify the abatement or dismissal of the action.

G.     It shall be the policy of the Commission to participate in alternative dispute resolution procedures where feasible; provided, however, that Disciplinary Actions shall be exempt from any requirements of mandatory alternative dispute resolution procedures as provided by Chapter 154 of the Civil Practice and Remedies Code or as otherwise provided by law.

# Appendix H

Text of Texas Rule of Civil Procedure 216

# RULE 216.  REQUEST AND FEE FOR JURY TRIAL

a. **Request.**   No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance.

b. **Jury Fee.** Unless otherwise provided by law, a fee of ten dollars if in the district court and five dollars if in the county court must be deposited with the clerk of the court within the time for making a written request for a jury trial. The clerk shall promptly enter a notation of the payment of such fee upon the court's docket sheet.